**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ALEXANDR ROMANOV,

    Petitioner,

vs.                                         Case No. 3:21-cv-779-MMH-MCR

ANYA SOTO,

    Respondent.
_____/

## O R D E R

**THIS CAUSE** is before the Court on the Motion for Petitioner's Attorney's Fees and Costs Pursuant to 22 USC § 9007(b)(3) (Doc. 65; Motion), filed February 22, 2022. Respondent Anya Soto (the Mother) timely filed a response in opposition to the Motion on February 28, 2022. See Respondent's Objection to "Motion for Petitioner's Attorney's Fees and Costs Pursuant to 22 USC §9007(B)(3)" (Doc. 66; Objection); Respondent's Memorandum in Support of Her Objection to "Motion for Petitioner's Attorney's Fees and Costs Pursuant to 22 USC §9007(B)(3)" (Doc. 67; Response).[1] Accordingly, this matter is ripe for review.

---

[1] Because the Mother reproduced the substance of the Objection in the Response, the Court will refer only to the Response in this Order.

## I.     Background

This tragic case arises under the Convention on the Civil Aspects of International Child Abduction (the Hague Convention), Oct. 25, 1980, T.I.A.S. No. 11670, as implemented by the International Child Abduction Remedies Act (ICARA), 22 U.S.C. § 9001, et seq.[2]  On August 11, 2021, Petitioner Alexandr Romanov (the Father) filed his Verified Petition for Return of Minor Children, Issuance of Show Cause Order and Provisional Measures (Doc. 1; Verified Petition).  In the Verified Petition, the Father requested the return of his minor children, M.R. and V.R. (the Children), from the United States to Canada.  See id. at 8.  After conducting an evidentiary hearing on November 16–18, 2021, see Minute Entries (Docs. 45, 48, 49; Evidentiary Hearing), the Court granted the Verified Petition on February 7, 2022.  See Order (Doc. 61; Return Order) at 33.[3]  The Court also directed the Father "to confer with opposing counsel and file [a] motion to recover necessary expenses incurred in the action."  Id. at 34.

In compliance with the Court's Return Order, the Father filed his Motion on February 22, 2022.  See generally Motion.  In the Motion, the Father argues that, pursuant to Article 26 of the Hague Convention and 22 U.S.C. § 9007(b)(3), he is entitled to "attorneys' fees, paralegal fees, and costs," in addition to "all

---

[2] ICARA was previously located at 42 U.S.C. § 11601.

[3] In the Return Order, the Court provided additional information regarding the factual background of this case.  See Return Order at 4–8.

necessary expenses incurred in the execution of the [Return] Order and in any other post-judgment requirements and/or proceedings." Motion at 2. The Father attached to the Motion the billing records of the Father's Canadian attorney, Steven Bookman, and an affidavit from one of the Father's local counsel, Francis M. Boyer. See Motion, Ex. 1: Canadian Billing (Doc. 65-1; Bookman Billing); Motion, Ex. 2: Affidavit of Attorneys' Fees (Doc. 65-2; Boyer Aff.). In his affidavit, Mr. Boyer represents that the Father seeks to recover $60,425.00 in fees for the Father's local attorneys, $1,684.05 in costs, and $14,255.45 in fees for Mr. Bookman. See Boyer Aff. at 2.

In her Response, the Mother argues that the Father is not entitled to recover attorneys' fees and costs because awarding those expenses would be clearly inappropriate. Response at 1–2. First, the Mother asserts that awarding fees and costs would be clearly inappropriate because she "does not have the ability to pay an attorney's fee award, and it 'would impose such a financial hardship that it would significantly impair [her] ability to care for the [Children].'" Id. at 3 (quoting Rath v. Marcoski, 898 F.3d 1306, 1311 (11th Cir. 2018)). Second, the Mother contends that awarding the Father his expenses would be clearly inappropriate because the Mother had a good faith belief that retaining the children in the United States was legal or justified. Id. at 5. Third, the Mother maintains that it would be clearly inappropriate for the Father to recover the fees of his Canadian attorney. See id.

- 3 -

## II. Legal Standard

Article 26 of the Hague Convention provides that "[u]pon ordering the return of a child," the judicial authority "may, where appropriate, direct the person who removed or retained the child . . . to pay necessary expenses incurred by or on behalf of the applicant." Hague Convention, Art. 26. In ICARA, the United States implemented Article 26 as follows:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title <u>shall order</u> the respondent to pay <u>necessary expenses</u> incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, <u>unless the respondent establishes</u> that such order would be <u>clearly inappropriate</u>.

22 U.S.C. § 9007(b)(3) (emphasis added). The Eleventh Circuit Court of Appeals has instructed that this statutory language creates "a strong presumption in favor of fee-shifting." Rath, 898 F.3d at 1310–11. Thus, courts have a "'mandatory obligation' . . . to award necessary expenses to a successful petitioner, except when the respondent demonstrates that an award would be clearly inappropriate." Id. at 1310 (quoting Salazar v. Maimon, 750 F.3d 514, 519 (5th Cir. 2014)).

Although ICARA does not define "clearly inappropriate," the Eleventh Circuit has found that the phrase grants "courts limited equitable discretion to determine when to allow an exception." Id. at 1311. This exception must be

- 4 -

"carefully circumscribed" so that the statute fulfills "its function of compensating successful petitioners and providing 'an additional deterrent to wrongful international child removals and retentions.'" Id. (quoting H.R. Rep. 100-525, at 14 (1988), 1988 U.S.C.C.A.N. 386, 395).  Courts may not draw the exception "so broadly as to make the analysis indistinguishable from what courts employ under a typical fee-shifting statute." Id.  In exercising their discretion, "courts must place on the losing respondent the substantial burden of establishing that a fee award is clearly inappropriate." Id.  This inquiry depends on the facts of each case. See id.

### III. Discussion

After carefully reviewing the arguments, the record, and the applicable law, the Court finds that the Motion is due to be granted to the extent that the Father is entitled to an award of necessary expenses, "including court costs, legal fees, . . . and transportation costs related to the return of the [Children]." 22 U.S.C. § 9007(b)(3).  Because the Court ordered the return of the Children, the Father is entitled to recover necessary expenses unless the Mother establishes that awarding his expenses would be clearly inappropriate. See Rath, 898 F.3d at 1310–11.  As discussed below, on the record before the Court, the Mother has not established that any award of expenses would be clearly inappropriate such that the Court would entirely deny the request for an award of expenses.

### A. Good Faith Belief

The Court begins its consideration of the Motion with the Mother's contention that any award of expenses at all would be clearly inappropriate because she acted based on a good faith belief that her actions were legal or justified. See Response at 5. The Mother asserts that her decision "was motivated not by a desire to defeat visitation with the [Father], but by concern for her wife's health." Id. The Mother also maintains that she was not forum-shopping and that she "actively participated in the Canadian post-dissolution proceedings and even sought the Canadian court's permission for her desired move." Id.

The Eleventh Circuit has instructed that awarding expenses may be inappropriate when the "respondent had a good faith belief that her actions in removing or retaining a child were legal or justified." Rath, 898 F.3d at 1311. Indeed, "the basis for a losing respondent's course of conduct can be a relevant consideration in deciding if a fee award is clearly inappropriate." Id. at 1312. In Rath, the Eleventh Circuit found that the district court had not abused its discretion in finding that the respondent had not acted in good faith. See id. There, the petitioner was unaware of the respondent's plan to remove the child from the Czech Republic to the United States, and the respondent waited to remove the child until the petitioner was out of the Czech Republic on business. See id. at 1312–13. Once the respondent arrived in the United States, she

immediately filed suit in Florida to determine child custody and support. See id. at 1312. The Eleventh Circuit held that these actions revealed a lack of good faith. See id. at 1312–13; see also Neves v. Neves, 637 F. Supp. 2d 322, 345 (W.D.N.C. 2009) (rejecting the respondent's good faith argument and finding that "the racial prejudice experienced by Respondent Neves and the children in Germany, while condemnable, does not serve to justify Respondent Neves's abduction of his children without the knowledge or consent of his estranged wife").[4]

In contrast, in Ozaltin v. Ozaltin, the Second Circuit found that the respondent had a good faith basis for believing that removing her children from Turkey to the United States was legal. See 708 F.3d 355, 376 (2d Cir. 2013). In that case, "Turkish courts repeatedly implied prior to the [respondent's] removal of the children from Turkey in November 2011 that the children could live with the [respondent] in the United States." Id. Because the respondent thought that she was acting with the Turkish courts' permission, the Second Circuit concluded "that it would be clearly inappropriate to award all necessary expenses associated with the [petitioner's] action under the Hague Convention." Id. at 376–78; see also Mendoza v. Silva, 987 F. Supp. 2d 910, 916–17 (N.D.

---

[4] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

Iowa 2014) (finding that the respondent had acted in good faith where he "had a mistaken, but nevertheless good faith belief that the parties had agreed that he would take the children to the United States where they would attend school").

Here, the Mother has not presented any evidence that she believed in good faith that her actions were legal or justified. The Mother and Father's Separation Agreement required that the parties both consent to "[a]ny and all travel outside the country." Return Order at 5 (citing Pet.'s Ex. 1-J at 118-143 (Separation Agreement) ¶ 4.7). While the Father agreed that the Mother and the Children could travel to Florida from January 4, 2021, until March 10, 2021, the Mother retained the Children in the United States without obtaining the Father's consent. See id. at 5, 7 ("It is undisputed that the Mother did not communicate with the Father about extending the Children's stay in the United States beyond March 10, 2021, and she did not have his consent to keep the Children in the United States past that date.").[5] Indeed, the Mother continued to retain the Children in the United States even after the Father expressly communicated his opposition. See id. at 7–8. Unlike the respondent in

---

[5] The Mother actually removed the Children from Canada before the January 4, 2021 date agreed upon and appears to have misled the Father about the Children's location. See Return Order at 6 & n.6 ("[C]oncerningly, on December 18, 2020, the Father received a text message, purportedly from V.R., which falsely represented that the Mother and Children were still in Canada." (citing Pet.'s Ex. 7)). This fact also weighs against a finding that she acted in good faith.

- 8 -

Mendoza, the Mother did not have the mistaken impression that the Father had consented to her actions. See 987 F. Supp. 2d at 916–17. Rather, the Mother knew that she was retaining the Children without the Father's consent, in violation of the Separation Agreement.

In addition, the Mother's actions do not demonstrate a good faith reliance on or respect for the Canadian court. Although the Mother eventually sought permission from the Canadian court to change the Children's residency, she did so only after she had wrongfully retained the Children in the United States, outside the Canadian court's jurisdiction. See Return Order at 7, 29. Moreover, as the Court previously stated, by wrongfully retaining the Children in California, the Mother "put her thumb on the scale in favor of her desired outcome." Id. at 30. Notably, the Mother's eventual decision to ask the Canadian court to modify the Children's residency provides evidence that the Mother knew her retention of the children in the United States was not lawful under the Separation Agreement. Unlike the respondent in Ozaltin, the Mother here was not acting under the mistaken but good faith belief that the Canadian court had already given her permission to move the Children's residency. See 708 F.3d at 376–78.

Without first seeking input from the Father or the Canadian court, the Mother unilaterally decided that her view of what was in the Children's best interests trumped the Father's legal rights. This type of action is precisely what

the Hague Convention was designed to prevent. As the Court previously noted, the record does not show that the Mother "acted with bad motive." Return Order at 32. However, it also does not show that she acted under a good faith belief that her actions were legal. Like the motive of the respondent in Neves, the Mother's motive here, even if benign, does not excuse knowingly violating the Father's rights under Canadian law. See 637 F. Supp. 2d at 345. Therefore, in exercising its "limited equitable discretion," the Court finds that the Mother has not met her "substantial burden" of establishing that her purported good faith renders a fee award clearly inappropriate. Rath, 898 F.3d at 1311.

### B. Financial Hardship

The Mother also argues that, because of her financial circumstances, an award of fees would significantly impair her ability to provide for the Children. Response at 3. The Mother maintains that the testimony at the Evidentiary Hearing established that she did not have any earned income because the pandemic had diminished the demand for her business as a corporate trainer. See id. The Mother also asserts that the Mother's wife could not legally work in Canada and could not work much in the United States due to her medical condition. See id. at 4. The Mother represents that she and her wife had been supporting themselves with the proceeds from the sale of a condominium in Canada but that those proceeds are exhausted. See id. Finally, the Mother contends that her financial situation is strained because the Father has not

paid child support since October 2020. See id. at 4–5. According to the Mother, the Father's past due child support totaled $22,000 as of September 8, 2021. See id. at 8–9.

The Eleventh Circuit has recognized that a fee award may be clearly inappropriate when it "would impose such a financial hardship that it would significantly impair the respondent's ability to care for the child." Rath, 898 F.3d at 1311. Additionally, some district courts "have declined to award costs at all, where the losing respondent would be unable to pay any amount of an award." Mendoza, 987 F. Supp. 2d at 915–16 (collecting cases); see also Hart v. Anderson, No. GJH-19-2601, 2021 WL 2826774, at *5 (D. Md. July 7, 2021) (discussing circumstances that courts have considered when making this determination).

Although the Mother raises this argument about her financial condition, she has not presented any evidence in support of it. The Mother has not produced a financial affidavit or any other information regarding her financial condition. Rather, she has provided only one document, an affidavit that was filed in the Canadian family law case in September 2021, some five months before the Court entered the Return Order. See Response at 7–9. Even that document is vague and conclusory. In it, the Mother says nothing about her financial situation and primarily addresses a dispute about the Father's financial disclosure in the Canadian case. See id.

Notably, the little evidence before the Court about the Mother's financial situation is incomplete and inconclusive. On the one hand, the testimony at the Evidentiary Hearing established that the pandemic reduced demand for the Mother's business and that the Mother's wife largely cannot work because of her medical condition. On the other hand, the record shows that, during the pendency of this lawsuit, the Mother and the Children moved away from extended family with whom they were living in Jacksonville, Florida, to picturesque—and expensive—Carlsbad, California, where they rented a home. See Return Order at 5 n.5, 8. The Mother argues that she has been supporting herself with the proceeds from the sale of her condominium in Canada, but the Mother has provided no evidence that those proceeds are her only or primary source of funds. In addition, the difficulties with the Mother's business may have been temporary because they were a consequence of the pandemic. Moreover, although greatly concerned by the Father's failure to pay child support, the Court finds that the existence of the $22,000 past due balance does not, by itself, establish that an award of fees would so financially burden the Mother that the Children would suffer. See Whallon v. Lynn, 356 F.3d 138, 140 (1st Cir. 2004) ("We do not accept respondent's belated invitation to use a fee award determination arising out of Hague Convention proceedings as a means of rectifying past violations of child support obligations. Our focus remains on

the question whether respondent has clearly established that it is likely that her child will be significantly adversely affected by the court's award.").[6]

Ultimately, the burden is on the Mother to show that her financial circumstances are so strained that an award of fees would affect her ability to care for the Children.  Not only does the Court have no information about the current custodial arrangements of the Children, but the Mother also has not provided any evidence that her ability to earn income continues to be or is permanently limited or that she lacks savings or other sources of income.  See Norinder v. Fuentes, 657 F.3d 526, 536–37 (7th Cir. 2011) ("Fuentes now tells us that her monthly income is just $3,300, and is consumed almost entirely by expenses and debts.  She does not provide any response, however, to the contention that her salary will soon be much larger.").  The Mother has not produced any financial affidavits or other evidence that she will not be able to care for the Children if the Court awards fees in this action.  See Whallon, 356 F.3d at 140 ("The only evidence given us of respondent's ability to provide for her child is the affidavit she submitted to the court over two years earlier . . . .

---

[6] The Court recognizes a split of authority about whether courts should consider child support arrears when making fee determinations in Hague Convention cases. Compare Mendoza, 987 F. Supp. 2d at 915 ("[A] reduction in a fee award should not be used to rectify a winning petitioner's past violations of child support obligations."), with Radu v. Shon, No. CV-20-00246-TUC-RM, 2021 WL 1056393, at *3–4 (D. Ariz. Mar. 19, 2021) (finding that the petitioner's failure to pay child support for four years "further warrants the denial of a fee award"). Even if the Court considers the Father's failure to pay child support, the Court cannot determine whether this failure has substantially affected the Mother's ability to provide for the Children because the Mother has not provided sufficient information to the Court about her financial circumstances.

- 13 -

This two page document contains four averments of a general or conclusory nature . . . ."); Cunningham v. Cunningham, No. 3:16-CV-1349-J-34JBT, 2017 WL 6942653, at *2 (M.D. Fla. Dec. 15, 2017) ("Although Respondents generally assert in the Response and Joint Notice that they are now both unemployed, that they are responsible for certain medical expenses, and that they otherwise live on fixed minimal incomes, they have offered no specific evidence of their complete financial situation that might persuade the undersigned to conclude that a reduction is warranted."), report and recommendation adopted, No. 3:16-CV-1349-J-34JBT, 2018 WL 398578 (M.D. Fla. Jan. 12, 2018); Warren v. Ryan, No. 15-CV-00667-MSK-MJW, 2015 WL 4365489, at *2–3 (D. Colo. July 16, 2015) ("[B]ased on this record and the generality of her request, the Court cannot determine what reduction is appropriate.  As noted, above, the information submitted by Ms. Ryan is conclusory, incomplete and somewhat inconsistent.").  Therefore, the Mother has not proven that any award of fees would be clearly inappropriate because of her financial circumstances.

Nevertheless, the Court may reconsider the Mother's financial circumstances when determining the amount of fees to be awarded.  Depending on the information that the Mother provides, the Court could find that awarding the full amount of the fees requested would be clearly inappropriate. See Moonga v. Moonga, No. 1:17-CV-2136-TWT, 2018 WL 4026020, at *3–4 (N.D. Ga. Aug. 23, 2018) (finding a reduction of approximately one-third to be

appropriate given the respondent's financial circumstances); Toufighjou v. Tritschler, No. 8:16-CV-1709-T-33JSS, 2016 WL 6122465, at *4 (M.D. Fla. Sept. 30, 2016) (finding a reduction to be warranted "to account for Defendant's straitened financial circumstances"), report and recommendation adopted, No. 8:16-CV-1709-T-33JSS, 2016 WL 6084097 (M.D. Fla. Oct. 18, 2016); Grano v. Martin, No. 19-CV-6970 (CS), 2021 WL 3500164, at *9 (S.D.N.Y. Aug. 9, 2021) (reducing the requested expenses by 85% but noting that "a complete reduction in fees and costs" was not necessary because the respondent "has a graduate degree from a Spanish university and should at some point be able to get permission to work"). In sum, based on the information currently in the record, the Court finds that the Mother's financial circumstances do not warrant a blanket denial of the Father's request for the recovery of his expenses in this action. However, as discussed below in Section IV, the Mother may provide the Court with additional information regarding the question of whether awarding the full amount of the Father's requested fees and expenses would be clearly inappropriate.

### C. Canadian Counsel

Next, the Court addresses the Mother's specific objection to the request for fees incurred for the Father's Canadian attorney. The Mother argues that the Father should not be entitled to recover the fees of his Canadian attorney, Mr. Bookman, because he was not an attorney of record in this case. Response

at 5. The Mother cites no law in support of her argument, and the Court finds the contention to be unpersuasive. ICARA broadly provides for the recovery of "necessary expenses," including legal fees. 22 U.S.C. § 9007(b)(3). Here, Mr. Bookman communicated with the Canadian central authority and drafted the initial forms and affidavit that the Father needed to seek relief under the Hague Convention. See Bookman Billing at 1–2. Mr. Bookman also actively assisted local counsel in analyzing Canadian law and the Hague Convention. See id. at 2–3. Faced with similar facts, the district court in Distler v. Distler found that the petitioner was entitled to an award of fees for her Israeli attorney. See 26 F. Supp. 2d 723, 728 (D.N.J. 1998) ("He acted as petitioner's legal counsel by giving her legal advice of her rights under the Hague Convention, helping her retain counsel in the United States, preparing a Legal Opinion, putting together affidavits with petitioner's Israeli relatives and friends for potential use in the case before this Court, and more. He also obtained, through the Israeli Ministry of Justice, the request of Israel's 'Central Authority' under the Treaty for international judicial assistance to repatriate the Distler children."). The Court finds the reasoning in Distler to be persuasive and concludes that retaining Mr. Bookman was a necessary expense for the Father.

In addition, Mr. Bookman served as an expert witness at the Evidentiary Hearing. Mr. Bookman's testimony assisted the Court in understanding the parents' rights under Canadian law. Thus, the Court finds that retaining Mr.

Bookman as an expert witness was a necessary expense for the Father. See Norinder, 657 F.3d at 536 (finding that the district court did not abuse its discretion by awarding fees for "the expert testimony on Swedish law, which was certainly pertinent to the case"); Saldivar v. Rodela, 894 F. Supp. 2d 916, 945–46 (W.D. Tex. 2012) (holding that the services of a Mexican attorney who served as an expert on the petitioner's rights under Mexican law were "clearly necessary to establish [p]etitioner's entitlement to the return remedy").

Finally, the Mother asserts that the Court lacks a "meaningful method of determining a reasonable hourly rate" for Mr. Bookman because he practices in Canada. Response at 5. This assertion is unavailing because the Mother presents no reason why the normal methods for proving the reasonableness of an attorney's charged rate would be ineffective. See Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) ("Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence.").[7] Thus, the Mother has not shown that it would be clearly inappropriate for the Court to award Mr. Bookman's fees. Subject to consideration of whether an award of the full amount of the Father's expenses would be clearly inappropriate, the Court finds that the Father is

---

[7] In future filings, the parties should address the question of the relevant market to be utilized in determining a reasonable hourly rate for Mr. Bookman.

entitled to recover Mr. Bookman's fees because Mr. Bookman's services were necessary to secure the return of the Children.

## IV. Procedure for Determining Amount

Pursuant to the bifurcated procedure prescribed by Local Rule 7.01 of the Local Rules of the United States District Court for the Middle District of Florida (Local Rule(s)), the Court determines in this Order that the Father is entitled to an award of attorneys' fees and expenses. Therefore, the parties must confer, and the Father must, within forty-five days of the entry of this Order, file a supplemental motion on the amount requested that conforms to the detailed requirements of Local Rule 7.01(c). If the parties do not resolve all of the issues on amount when they meet and confer, the Mother's response to the Father's supplemental motion on amount "must detail the basis for each objection, including the identification by day and timekeeper of an unreasonable claim." Local Rule 7.01(d). In addition, if the Mother wishes to argue that the amount awarded should be reduced because of her financial situation, she must provide sufficient evidence from which the Court can determine whether the Mother is caring for the Children and, if so, whether awarding all of the Father's claimed fees and expenses would impair the Mother's ability to provide that care. The Court notes that it has no information regarding the Mother's current financial situation or what, if anything, the Canadian court has decided with regard to child custody and support. The Court reminds the Mother that it is her

substantial burden to demonstrate that awarding <u>all</u> of the Father's necessary expenses would be clearly inappropriate. The Court is hopeful, however, that the parties can agree on the amount of fees and expenses, taking reasonably into account the Mother's wrongful retention that necessitated the litigation of this case, the Father's failure to pay child support for several months, and—most importantly—the need to provide for the Children.

## V.  Conclusion

Under ICARA, the Father is presumptively entitled to a recovery of necessary expenses in this action because the Court ordered the return of the Children to Canada. The Mother has not demonstrated that any award of expenses would be clearly inappropriate. Therefore, the Court finds that the Motion is due to be granted to the extent that the Father is entitled to an award of necessary expenses, "including court costs, legal fees, . . . and transportation costs related to the return of the [Children]." 22 U.S.C. § 9007(b)(3). The Court will direct the parties to confer as to the amount of expenses to be awarded, and the Father will have forty-five days to file a supplemental motion.

Accordingly, it is

**ORDERED:**

1. The Motion for Petitioner's Attorney's Fees and Costs Pursuant to 22 USC § 9007(b)(3) (Doc. 65) is **GRANTED**.

2. The parties are **DIRECTED** to meet and confer regarding the amount of fees and expenses to be awarded.

3. Petitioner shall have up to and including **October 11, 2022**, to file his supplemental motion as to amount in compliance with Local Rule 7.01(c).

**DONE AND ORDERED** in Jacksonville, Florida, on August 24, 2022.

MARCIA MORALES HOWARD
United States District Judge

lc30
Copies to:

Counsel of Record